UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company,

Plaintiffs,

v.

Hyundai Motor Company, a South Korean corporation and Hyundai Motor America, Inc., a California corporation,

Defendants.

Civil File No. 01-627 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("State Farm") filed this suit against Defendants Hyundai Motor Company and Hyundai Motor America, Inc. ("Hyundai") seeking contribution for damages that State Farm paid to a third party on behalf of its insured. This matter is before the Court on Hyundai's Motion for Summary Judgment and Rule 11 Sanctions. For the reasons that follow, the Court grants summary judgment in favor of Hyundai.[1]

**BACKGROUND**

On April 10, 1995, State Farm's insured, Kyle Lindgren, lost control of a 1991

[1] The Court denied Hyundai's request for Rule 11 sanctions at the oral hearing on this matter. Accordingly, the Court will not address that request in this Order.

NOV 2 1 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 2 1 2001
DEPUTY CLERK

Hyundai Excel. The car rolled and Mr. Lindgren's front-seat passenger, Jodi Michaelle Carlson, was ejected from the vehicle. Ms. Carlson sustained severe neck and back injuries that rendered her a quadriplegic.

In 1996, Ms. Carlson, represented by the same counsel that currently represents State Farm, commenced a product liability suit against Hyundai claiming that Hyundai designed and manufactured a defective car and seat belt restraint system. According to Ms. Carlson, these defects enhanced her injuries. Hyundai successfully argued, before Judge Richard H. Kyle, that this crashworthiness claim was foreclosed by Minn. Stat. § 169.685, subd. 4 ("the seat belt gag rule"), which rendered inadmissable any evidence relating to "the use or failure to use seat belts." See Carlson v. Hyundai Motor Co., Civ. No. 6-96-228, slip op. at 5 (D. Minn. June 13, 1997) ("Carlson I"). Sometime during the pendency of her case, Ms. Carlson lobbied the Minnesota state legislature, and eventually the seat belt gag rule was amended to provide an exception for plaintiffs bringing an action for damages arising out of an incident that involves a defective seat belt.

On appeal, the Eighth Circuit upheld Judge Kyle's ruling. See Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1162 (8th Cir. 1999). Ms. Carlson continued to seek relief in both the Eighth Circuit and in the District Court and eventually sought review in the Supreme Court. Her petition for a writ of certiorari was denied. See Carlson v. Hyundai Motor Co., __ U.S. __, 121 S. Ct. 1086 (2001).

On April 10, 2001, State Farm filed this suit, seeking "contribution and/or indemnity"

from Hyundai as repayment for monies State Farm paid to Carlson on behalf of Mr. Lindgren. (See Compl. ¶¶ 19, 25.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### B. Merits

As an initial matter, because State Farm's claim arises from the liability of its insured,

Kyle Lindgren, State Farm only has a potential right to contribution as a subrogee of Mr. Lindgren. See Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1315 (8th Cir. 1991). Accordingly, State Farm has only those rights that the subrogor, Mr. Lindgren, had at the time of the accident and merely steps into the Mr. Lindgren's shoes. See State Farm Mut. Auto Ins. Co. v. Ford Motor Co., 572 N.W.2d 321, 324 (Minn. Ct. App. 1997) (citations omitted). In other words, State Farm gains only those claims against Hyundai that Mr. Lindgren potentially had against Hyundai. See Group Health, Inc. v. Heuer, 499 N.W.2d 526, 529 (Minn. Ct. App. 1993) (citing Travelers Indemnity Co. v. Vaccari, 245 N.W.2d 844, 847 (Minn. 1976).

Accordingly, the pivotal question in this case is whether Mr. Lindgren had a contribution claim against State Farm. Hyundai persuasively argues that because the injured party, Ms. Carlson, had no claim against Hyundai, Mr. Lindgren could have had no claim against Hyundai. The weight of this argument rests on the legal aphorism that "[c]ontribution is appropriate where there is a common liability enforceable against each co-tortfeasor." Nelson v. Larsen, 405 N.W.2d 455, 458 (Minn. Ct. App. 1987); see also Hart v. Cessna Aircraft Co., 276 N.W.2d 166, 168 (1979) (noting that the essential elements for a contribution action are a common liability of joint tortfeasors to an injured party and the payment by one of the tortfeasors of more than his or her share of that liability). The requisite common liability "does not exist if the injured party could not bring a direct action against each of the co-tortfeasors. . . . If one of the co-tortfeasors has a defense going to the

merits of the injured party's claim, there is no common liability between that tortfeasor and the other tortfeasors." Nelson, 405 N.W.2d at 458. In this case, Hyundai contends that the seat belt gag rule was a defense going to the merits of Ms. Carlson's claim against Hyundai.

State Farm argues that: (1) common liability is not always necessary in a contribution action; and (2) even if common liability is necessary, it exits in this case because the seat belt gag rule is a technical or procedural defense which does not go to the merits of Ms. Carlson's claim. Accordingly, State Farm avers that there are genuine issues of material fact regarding the extent of Hyundai's liability in this case which render summary judgment inappropriate.

In support of its first argument, State Farm argues that contribution is an equitable remedy of restitution for "one who has discharged more than his fair share of a common liability or burden." Hendrickson v. Minn. Power & Light Co., 258 Minn. 368, 370 (1960), overruled on other grounds by Tolbert v. Gerber Indus., Inc., 255 N.W.2d 362 (Minn. 1977). Bearing in mind the equitable nature of contribution, the court in Lambertson v. Cincinnati Corp., 257 N.W.2d 679, 688 (Minn. 1977) determined that "[c]ontribution is a flexible . . . remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability." Id. Employing the reasoning of Lambertson, State Farm argues that common liability "is less essential for contribution than the equitable principle of assuring that one contributing tortfeasor is not made to pay a disproportionate share of an injury claim." (Pls.' Opp'n Mem. at 7.) State Farm suggests that it would be unfair to allow

Hyundai to escape its share of liability for Ms. Carlson's injuries because the seat belt gag rule no longer precludes a plaintiff's crashworthiness suit.

As Hyundai points out, however, Lambertson was factually unique. The court in that case noted an anomaly: the statutory liability imposed by workers' compensation means that there never is common liability in tort between the employer and a third-party tortfeasor. Id. at 684-85. The court held that "[w]hile there is no common liability to the employee in tort, both the employer and the third party are nonetheless liable to the employee for his injuries; the employer through the fixed no-fault workers' compensation system and the third party through the variable recovery available in a common law tort action." Id. at 688. Accordingly, Lambertson provided an exception to, or at most an analytical expansion of, the common liability requirement; it did not do away with the requirement. See Hart, 276 N.W.2d at 169 ("although we are aware that the requirement of common liability has been criticized, we have not eliminated it"). A generous reading of Lambertson yields nothing more than the unsurprising conclusion that where a one tortfeasor is held liable by statute and another tortfeasor is held liable by tort, common liability for the purposes of contribution exists.

Accordingly, Lambertson does not help State Farm in this case. The question here is whether Hyundai was ever legally liable. State Farm's attempt to shift the focus of the inquiry away from this question is unpersuasive. It is impossible for the Court to consider the equitable nature of contribution unless it first determines that there was a common

liability for which State Farm paid more than its share.

State Farm's second argument addresses the appropriate question in this case. State Farm argues that technical or procedural defenses will not necessarily prevent common liability from arising. See, e.g., Nelson, 405 N.W.2d at 457. In this case, State Farm argues that the seat belt gag rule, as it existed at the time of the accident, was legally analogous to a statute of limitations because it was merely a technical or procedural defense. See, e.g., City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 877 (Minn. 1994) (stating that the right of contribution may exist although the originally aggrieved party's claim has expired); Nelson 405 N.W.2d at 457 (stating that technical or procedural defenses such as release, statute of limitations, or failure to provide statutory notice, which do not go to the merits of a claim, are defenses which do not deny liability but merely avoid it).

Defendant argues, and the Court agrees, that its defense was not merely technical. Unlike the statute of limitations, which works to divest a plaintiff of a claim that has accrued, the seat belt gag rule prevented a plaintiff from alleging the facts that would be necessary to create a claim. The court in Nelson makes it clear that "[c]ommon liability is created at the instant a tort or wrong is committed." Nelson, 405 N.W.2d at 457 (citations omitted). At the time that the accident happened in this case, Ms. Carlson was legally prevented from alleging facts which would have allowed her to pursue a claim against Hyundai. Accordingly, at the time of the accident, no claim existed. As Hyundai notes, it was "impossible" for Ms. Carlson to prevail against it. See Carlson I, Civ. No. 6-96-228, slip op. at 5 (holding that "the

seat belt gag rule precludes [Ms. Carlson's] claims"); see also Olson v. Ford Motor Co., 558 N.W.2d 491, 496 (Minn. 1997) (the seat belt gag rule barred "the introduction of evidence of a plaintiff's personal seat belt use in a crashworthiness action alleging the seat belt itself was negligently designed or manufactured"). Ms. Carlson, in other words, was not denied a claim because of some lapse on her part after a claim accrued, but because she did not have a claim. Therefore, Hyundai had no common liability with Mr. Lindgren or, by extension, State Farm.

For the foregoing reasons, and upon all the files, records, and proceedings herein, the Court finds that State Farm's claim fails as a matter of law. Accordingly, **IT IS HEREBY ORDERED** that:

1. Hyundai's Motion for Summary Judgment (Clerk Doc. No. 6) is **GRANTED**; and

2. Hyundai's Motion for Rule 11 Sanctions (Clerk Doc. No. 6) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 20, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*